IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BROOKE MASON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 23 C 16339 |
| ) | |
| COOK COUNTY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Brooke Mason, a former pharmacist for Cook County Health (CCH), sued Cook County after it terminated her for failing to obtain a COVID-19 vaccination. Ms. Mason alleges that CCH's application of its mandatory vaccination policy violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

Cook County has filed a motion for summary judgment.[1] For the reasons below, the Court grants Cook County's motion.

**Background**

The following facts are undisputed unless otherwise noted. Cook County is responsible for operating Cook County Health, one of the largest public health systems in the country. Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 2. CCH has approximately 5,900 employees and provides a range of health care services to its patients and the community, including the operation of John H. Stroger Jr. Hospital. *Id.* CCH's stated

---

[1] The Court refers to defendant Cook County and CCH interchangeably throughout this opinion.

mission is to "[e]stablish universal access to the world's best care and health services for all Cook County residents, regardless of the ability to pay, so all may live their healthiest life."  *Id.* ¶ 16.  By 2022, CCH had cared for more than 2,000 hospitalized COVID-19 patients, provided more than 300,000 COVID-19 tests, and administered over one million doses of the COVID-19 vaccine.  *Id.* ¶ 15.

CCH has enacted various policies that require employees to obtain vaccination from infectious diseases.  *Id.* ¶ 18.  In response to the COVID-19 pandemic, CCH instituted a "Mandatory COVID-19 Vaccination for Personnel Policy" on August 16, 2021.  *Id.* ¶ 24.  Although mitigations such as masking and testing were useful prevention tools, vaccination afforded employees with additional protection from severe illness from COVID-19.  *Id.* ¶ 22.  The policy required staff to receive a COVID-19 vaccine or an exemption from or deferral of the vaccination requirement based on a medical condition or a sincerely held religious belief.  *Id*.  To obtain a religious accommodation, an employee had to submit a request to Employee Health Services identifying a "sincerely held religious belief, practice, or observance."  *Id.* ¶ 26.  In September 2021, CCH's leadership team determined that exemption requests "could only be granted to employees whose duties could be performed on a fully remote basis."  *Id.* ¶ 30.

Brooke Mason was a pharmacist at CCH at the time it instituted its vaccination policy.  *Id.* ¶ 48.  She worked at Stroger Hospital in a room with approximately 20 pharmacists and 40 pharmacy technicians.  *Id.* ¶¶ 48, 50.  Ms. Mason also counseled approximately eight patients at the pharmacy window approximately once per month.  *Id.* ¶ 53.

On August 26, 2021, Ms. Mason submitted a request to Employee Health Services seeking an exemption from the COVID-19 vaccination policy. A letter attached to her request read as follows:

> To Whom It May Concern, 1 Corithians [sic] 6:19—Or do you not know that your body is a temple of the Holy Spirit within you, whom you have from God? You are not your own for you were bought with a price. So glorify God in your body.
>
> I am unable to comply with Cook County Health's Covid vaccine mandate as it runs counter to my Christian beliefs and request an accommodation. My beliefs are an all encompassing guide, leading my daily life and central to these beliefs is the requirement to keep my body and soul pure. Although I am not perfect I strive to honor the Lord our Savior in all I do. God's word tells us to keep thy body pure: My body is the temple of the Holy Spirit and shall not be defiled. I am fully immunized as the good Lord intended. Thank you for your consideration.

*Id.*, Ex. 7, at 2.

On September 24, 2021, Nicholas Krasucki, the CCH Equal Employment Opportunity Director, sent Ms. Mason a letter denying her request for a religious exemption. *Id.*, Ex. 8. The letter explained that "potential transmission of COVID-19 through unvaccinated personnel poses a threat to the safety of our patients, staff, visitors and [Ms. Mason], and exempting [Ms. Mason] from the CCH vaccination requirement would compromise workplace safety, infringe upon the rights of our workforce, patients, and visitors, and otherwise pose an undue hardship to CCH." *Id.* The letter also informed Ms. Mason that, effective October 1, 2021, employees who had not received at least the first shot of the COVID-19 vaccine would not be permitted to work on site. *Id.*

Following this denial, Ms. Mason did not obtain a COVID-19 vaccine. In October 2021, CCH granted Ms. Mason a 90-day unpaid leave to seek another position within

3

CCH.  *Id.* ¶ 75.  On January 19, 2022, CCH held a pre-disciplinary hearing on charges that Ms. Mason was in violation of CCH's personnel rules for failing to comply with the COVID-19 mandatory vaccination policy.  *Id.* ¶ 77.  The hearing officer who presided over the pre-disciplinary hearing recommended that Ms. Mason be terminated.  *Id.*  On May 20, 2022, CCH terminated Ms. Mason's employment.  *Id.* ¶ 78.  About fourteen months later, in July 2023, CCH lifted its restriction on unvaccinated employees working in person.  *Id.* ¶ 46.  CCH suspended its vaccination policy a little under two years after that, in April 2025.  *Id.* ¶ 47.  Today, CCH continues to encourage its employees to receive COVID-19 vaccinations and boosters.  *Id.*

Ms. Mason filed this lawsuit against Cook County on November 29, 2023, and filed her first amended complaint on March 7, 2024.  She alleges that CCH's denial of a reasonable religious accommodation and her subsequent firing violated Title VII of the Civil Rights Act of 1964.

Discovery is complete.  Cook County has moved for summary judgment on Ms. Mason's claim.

## Discussion

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate that no genuine dispute of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court may not "make credibility determinations" or "weigh the evidence." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Still, to avoid summary judgment, the nonmoving party must identify "specific facts showing that there is a genuine issue for trial" that go beyond a "mere scintilla of evidence." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018).

**A.     Title VII failure to accommodate**

"Title VII makes it unlawful for an employer to 'fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Passarella v. Aspirus*, 108 F.4th 1005, 1008 (7th Cir. 2024) (quoting 42 U.S.C. § 2000e-2(a)(1)). The statute defines "religion" as "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates" an inability "to reasonably accommodate [] an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* at 1008–09 (quoting 42 U.S.C. § 2000e(j)) (modification in original). The Seventh Circuit has "described this definition as blending a broad substantive definition of religion with an implied duty to accommodate employees' religions and an explicit affirmative defense for failure-to-accommodate claims." *Id.* at 1009 (cleaned up).

To sustain a Title VII claim for failure to accommodate a religious belief or

5

practice, the employee must first establish that: "(1) the practice is religious in nature and conflicts with the employer's requirements; (2) the employee notified his employer of the religious practice; and (3) the need for a religious accommodation was a motivating factor for the adverse employment decision." *Kluge v. Brownsburg Cmty. Sch. Corp.*, --- F.4th ---, 2025 WL 2218112, at *7 (7th Cir. 2025). Once the employee makes this showing, "the burden shifts to the employer to show that any reasonable accommodation would result in undue hardship." *Id.*

CCH argues that Ms. Mason has failed to connect her objection to vaccination with her religious beliefs. Ms. Mason counters that her asserted prohibition against altering the body or subjecting it to spiritual impurities is common among the world's religions. The Seventh Circuit has cautioned "that courts should avoid putting themselves in the impossible position of trying to define religious legitimacy and viewpoint sufficiency." *Kluge*, 2025 WL 2218112, at *15 (quoting *Bube v. Aspirus Hosp., Inc.*, 108 F.4th 1017, 1020 (7th Cir. 2024)). Thus the Court assumes, without deciding, that Ms. Mason could establish a prima facie case and turns directly to CCH's undue hardship defense.

"Absent a reasonable accommodation," an employer is "required to demonstrate that any accommodation would have caused it undue hardship." *EEOC v. Ilona of Hung., Inc.*, 108 F.3d 1569, 1576 (7th Cir. 1997). "'[U]ndue hardship' in Title VII means what it says, and courts should resolve whether a hardship would be substantial in the context of an employer's business in the common-sense manner that it would use in applying any such test." *Groff v. DeJoy*, 600 U.S. 447, 471 (2023). This is a highly "context-specific" inquiry. *Groff*, 600 U.S. at 473. "Courts must consider all relevant

factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of [an] employer." *Kluge*, 2025 WL 2218112, at *7 (quoting *Groff*, 600 U.S. at 470–71).  In the context of COVID-19 vaccines, the EEOC noted that, when evaluating whether an accommodation may pose an undue hardship, employers may commonly consider whether the employee "works outdoors or indoors, works in a solitary or group work setting, or has close contact with other employees or members of the public (especially medically vulnerable individuals)." U.S. Equal Emp. Opportunity Comm'n, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, L.3 (2022). Overall, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff*, 600 U.S. at 470.

     CCH argues that granting Ms. Mason's request for an exemption from its mandatory COVID-19 vaccination policy would have created an undue hardship because her job responsibilities involved direct patient care as well as daily contact and interaction with coworkers.  CCH made the decision to deny her request in the context of an unprecedented global pandemic.  Ms. Mason responds that "[a]ccommodation could not have involved increased costs (and certainly not substantially increased costs) because its [sic] what Plaintiff was already doing to that point."  Pl. Resp. Br. at 9.  Ms. Mason essentially argues that CCH cannot establish an undue hardship because it could have and should have simply maintained the status quo of masking and social distancing even after a vaccine became available.  This argument is unpersuasive.  Ms. Mason worked at Stroger Hospital in the same room with approximately 60 other

healthcare workers. Healthcare workers were already at an increased risk of contracting COVID-19 through infected patients, not to mention through other healthcare staff. Healthcare workers were also at an increased risk of infecting patients, including individuals who were medically vulnerable, as well as co-workers who themselves worked with patients. By 2022, CCH treated hundreds of thousands of patients for COVID-19 hospitalizations, testing, and vaccinations alone. When a COVID-19 vaccine became available during a global pandemic, CCH implemented a mandatory vaccination policy. Finally, CCH determined that masking, social distancing and regular COVID-19 testing did not sufficiently address the patient and employee safety risks across CCH facilities.

Based on these facts, it is not genuinely disputed that allowing Ms. Mason to continue working as a pharmacist at Stroger Hospital when she was unvaccinated would have jeopardized the health of CCH staff and patients. Ms. Mason does not contend in her response to CCH's motion that she could have fulfilled her job responsibilities offsite, so the argument is waived or forfeited. *United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318 (7th Cir. 2016). The argument would also fail on the merits. Ms. Mason's job responsibilities included filling prescriptions, supervising pharmacy technicians, and supervising, receiving, inspecting and accounting for the pharmacy's controlled substances. Nothing in the record permits Ms. Mason to genuinely disputed that she could not fulfill these responsibilities offsite. Thus CCH has established it could not have reasonably accommodated Ms. Mason's request for an exemption from the mandatory vaccination policy without incurring substantial increased costs related to both staffing and patient care. No reasonable fact-finder could find

otherwise.

Ms. Mason's primary counterargument relates to a different Cook County employee, identified as "Sanitarian I in the Department of Public Health," who was not vaccinated by the October 1, 2021 deadline and was not terminated. She argues that this other employee is relevant to show that CCH would not have suffered an undue hardship by accommodating Ms. Mason. Ms. Mason focuses on the Seventh Circuit's decision in *Adeyeye* to support her argument. In that case, Adeyeye was a factory worker who requested an accommodation to attend the religious burial rites of his father in Nigeria. *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013). The Seventh Circuit held that there was a genuine dispute regarding whether accommodating Adeyeye by providing several weeks of unpaid leave would have imposed an undue hardship on Adeyeye's employer. *Id.* at 455. This dispute was based on evidence of the employer's high turnover and frequent use of temporary and substitute workers. *Id*. *Adeyeye* does not support Ms. Mason's position. Sanitarian I was employed by the Department of Public Health. The Department of Public Health is an affiliate of CCH, but its office is not located at Stroger Hospital. Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 43. In short, based on the record before the Court, Sanitarian I did not work at Stroger Hospital. Ms. Mason, however, worked at Stroger Hospital in a room with approximately 60 other healthcare workers. In sum, Sanitarian I is not legitimately comparable to Ms. Mason, and thus CCH's treatment of Sanitarian I is not relevant to the Court's analysis.

The Court concludes no reasonable factfinder could find that CCH could have accommodated Ms. Mason's request for an exemption from its mandatory COVID-19

9

vaccination policy without suffering undue hardship. The Court therefore grants CCH's motion for summary judgment on Ms. Mason's failure-to-accommodate claim.

**B.      Title VII disparate treatment**

Ms. Mason argues that her claim also succeeds under a disparate treatment theory. Regardless of the evidentiary approach used in a disparate treatment claim, the sole question before the Court on summary judgment is "whether the plaintiff has introduced evidence that would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Galvan v. Indiana*, 117 F.4th 935, 939 (7th Cir. 2024). "[I]f a plaintiff makes a prima facie case of discrimination, the burden shifts to the employer to offer a nondiscriminatory motive and, if the employer is able to do so, the burden shifts to the employee to show that the employer's proffered reason was a pretext." *Id*.

Ms. Mason argues in conclusory fashion that because Sanitarian I was not vaccinated but was not disciplined, "this is disparate treatment." Pl. Resp. Br. at 15. As discussed, it is undisputed that Ms. Mason worked at Stroger Hospital and that Sanitarian I did not. This alone is sufficient to defeat a claim of disparate treatment; the two are not legitimately comparable. CCH is thus entitled to summary judgment on Ms. Mason's claim to the extent it relies on a disparate treatment theory.

## Conclusion

For the reasons stated above, the Court grants Cook County's motion for summary judgment [dkt. 56]. The Court directs the Clerk to enter judgment stating:

Judgment is entered in favor of defendant and against plaintiff.

Date:  September 5, 2025

                                                 _____
                                                     MATTHEW F. KENNELLY
                                                     United States District Judge